PAULA J. HONEYCUTT, Plaintiff
v.
JOSEPH N. HONEYCUTT, JR., Defendant
No. COA07-29
Court of Appeals of North Carolina.
Filed January 15, 2008
This case not for publication
Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Heidi C. Bloom, for plaintiff-appellee.
Marshall & Taylor, P.C., by Jeffrey E. Marshall, for defendant-appellant.
HUNTER, Judge.
Joseph N. Honeycutt, Jr. ("defendant") appeals from an order awarding alimony in the amount of $3,000.00 per month for a period of seven (7) years to Paula J. Honeycutt ("plaintiff"). In that order, the trial court also concluded that plaintiff was entitled to reasonable attorneys' fees, the hearing on that matter to be set at a later date. Defendant appeals. After careful consideration, we affirm the ruling of the trial court.
Plaintiff and defendant married on 4 February 1989 and separated on 31 December 2004. No children were born of the marriage. Defendant had two children from a previous marriage whodid not live with the parties, and plaintiff had one daughter from her prior marriage who lived with the parties.
Plaintiff and defendant initially lived in Scotts Hill, North Carolina, and both were employed. Defendant eventually took a position with Canon Office machines and the parties moved to Chester, Virginia. Plaintiff worked as an in-store product demonstrator and in an orthodontist's office while in Chester. In Chester, they owned a two-story, four bedroom, two-and-a-half bath home on a wooded three-quarter acre lot.
In June 2001, plaintiff moved to her mother's home in Wilmington, North Carolina. The move allowed plaintiff to take care of her mother, who was in ailing health, to establish North Carolina residency for her daughter who was attending North Carolina State University, and to save money until the parties could build a home in Wilmington. Plaintiff remained in her mother's home until her mother's physician suggested that plaintiff move due to the stress the parties' separation was causing on plaintiff's mother. Thereafter, plaintiff moved into an apartment.
In July 2003, defendant moved to Raleigh, North Carolina. Defendant rented a condominium in Raleigh and shared it with plaintiff's daughter while she was attending North Carolina State University. In late 2004, defendant began having a sexual relationship with another woman and told plaintiff in December 2004 that he wanted a divorce. Until that time, the parties still visited one another and held themselves out as husband and wife. The remaining facts relevant to the disposition of this case are summarized in the discussion.
Defendant presents the following issues for this Court's review: (1) whether the trial court's order awarding plaintiff alimony should be reversed because the trial court cited a repealed statute; (2) whether the trial court made sufficient findings of fact and conclusions of law as to alimony; (3) whether the trial court made sufficient findings of fact and conclusions of law as to attorneys' fees; and (4) whether the trial court erred in requiring defendant to pay his alimony obligation through an automatic bank draft.

I.
Defendant first argues that the trial court erred by relying on N.C. Gen. Stat. §§ 50-16.1 and 50-16.3 to make its award of alimony. We disagree.
Alimony is comprised of two separate inquiries. First, the court must determine whether a spouse is entitled to alimony. N.C. Gen. Stat. § 50-16.3A(a) (2005). Entitlement to alimony requires that one spouse be a dependent spouse, the other be a supporting spouse, and that an award of alimony be equitable considering all relevant factors. N.C. Gen. Stat. § 50-16.3A(a)-(b). If a party is entitled to alimony, we review the amount given for an abuse of discretion. Bryant v. Bryant, 139 N.C. App. 615, 619, 534 S.E.2d 230, 233 (2000).
In its permanent alimony order, the trial court cited N.C. Gen. Stat. § 50-16.1 in support of its finding and conclusion that plaintiff is a dependent spouse and defendant is a supporting spouse. That statute, however, was repealed by Session Law 1995, c. 319, s.1 and replaced by N.C. Gen. Stat. § 50-16.1A. Plaintiff concedes that the citation to the repealed statute was erroneous but instead argues that the error was slight and does not warrant a remand. We agree.
Our Supreme Court has held that "verdicts and judgments will not be set aside for harmless error, or for mere error and no more." In re Ross, 182 N.C. 477, 478, 109 S.E. 365, 365 (1921). Instead, defendant must show "not only that the ruling complained of was erroneous, but that it was material and prejudicial, amounting to a denial of some substantial right." Id. The rationale is that "appellate courts will not encourage litigation by reversing judgments for slight error, or for stated objections, which could not have prejudiced the rights of appellant in any material way." Id.
Both N.C. Gen. Stat. § 50-16.1A and N.C. Gen. Stat. § 50-16.1 (repealed), set out the definition of "dependent spouse" and "supporting spouse." The definition of "dependent spouse" is identical in both statutes while the definition of "supporting spouse" is identical except for the insertion of the word "other," which only serves as a grammatical improvement. Defendant has not demonstrated any prejudice as a result of the trial court's clerical error. Accordingly, we reject defendant's argument that the trial court committed reversible error by citing N.C. Gen. Stat. § 50-16.1 as opposed to N.C. Gen. Stat. § 50-16.1A. Defendant next argues that the trial court committed reversible error by citing N.C. Gen. Stat. § 50-16.3. That statute was also repealed by Session Law 1995 c. 319, s. 1. and replaced with N.C. Gen. Stat. § 50-16.3A. Although the statutes differ substantially, our review of the record reveals that the trial court applied the correct statute and any error was merely clerical and does not warrant a new trial.
Under N.C. Gen. Stat. § 50-16.3A, sixteen (16) factors are set out for the trial court to consider in determining if a party is entitled to alimony. Under the repealed N.C. Gen. Stat. § 50-16.3, only two (2) factors are set out to determine whether alimony is appropriate in a particular case. In order to determine whether the trial court applied the proper statute, we need only look at the order and the evidence presented, because under N.C. Gen. Stat. § 50-16.3A(c), the trial court is required to make "specific finding[s] of fact on each of the [sixteen] factors . . . if evidence is offered on that factor." Accordingly, if the trial court made findings of fact that correlate with the sixteen factors listed in N.C. Gen. Stat. § 50-16.3A(b), the trial court's error does not warrant a new trial.
In the instant case, the trial court made a finding as to every factor under N.C. Gen. Stat. § 50-16.3A(b) where evidence was offered as to that factor. Specifically, the trial court made a finding as to defendant's "marital misconduct" under N.C. Gen. Stat. § 50-16.3A(b)(1), the relative earning capacity of both parties under N.C. Gen. Stat. § 50-16.3A(b)(2), the "ages and the physical, mental, and emotional conditions of the spouses" under N.C. Gen. Stat. § 50-16.3A(b)(3), the parties' earned and unearned income under N.C. Gen. Stat. § 50-16.3A(b)(4), the duration of the marriage under N.C. Gen. Stat. § 50-16.3A(b)(5), the standard of living for both spouses established during the marriage under N.C. Gen. Stat. § 50-16.3A(b)(8), the tax ramifications of the alimony award under N.C. Gen. Stat. § 50-16.3A(b)(14), and other relevant factors relating to the economic circumstances of the parties. Moreover, no finding of fact tracks the language found in the repealed statute actually cited by the trial court. Accordingly, the error committed by the trial court does not warrant a new trial on this issue and defendant's arguments to the contrary are summarily rejected.

II.
Defendant next argues that the trial court did not make adequate findings of fact and conclusions of law to support the amount of alimony ordered. We disagree.
We review the amount of alimony awarded under an abuse of discretion standard. Bryant, 139 N.C. App. at 619, 534 S.E.2d at 233. "In determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors, including" the sixteen (16) factors set out in N.C. Gen. Stat. § 50-16.3A(b). N.C. Gen. Stat. § 50-16.3A(b); see also Friend-Novorska v. Novorska, 143 N.C. App. 387, 394, 545 S.E.2d 788, 793 (same), affirmed per curiam, 354 N.C. 564, 556 S.E.2d 294 (2001). This Court has held that the findings of fact required to support the amount, duration, and manner of payment of an alimony award are sufficient if findings of fact "have been made on the ultimate facts at issue in the case, and the findings of fact show the trial court properly applied the law in the case." Novorska, 143 N.C. App. at 395, 545 S.E.2d at 794. There is no requirement, however, that the trial court set out the weight given to each factor, "as the weight given the factors is within the sound discretion of the trial court." Id. at 395-96, 545 S.E.2d at 794.
Defendant contends that the trial court failed to make sufficient findings of fact and conclusions of law relating to the standard of living for the parties prior to their separation under N.C. Gen. Stat. § 50-16.3A(b)(8). In evaluating the standard of living, "[t]he trial court must determine the standard of living, socially and economically, to which the parties as a family unit had become accustomed during the several years prior to their separation." Williams v. Williams, 299 N.C. 174, 183, 261 S.E.2d 849, 856 (1980).
In the instant case, the trial court made a finding of fact that specifically addressed the social and economic standard of living during the marriage. That finding provides:
The family was very comfortable but did not live an extravagant lifestyle. They had a two-story, four bedroom, two and [a half] bath home on a wooded [three-quarter] acre lot. The[y] took vacations and engaged in activities associated with Carolina beach music and shag dancing which included conventions, competitions and trips to Myrtle Beach. They also took trips to New York, Las Vegas plus company trips that included a trip to Hawaii.
Moreover, the trial court made other findings relating to the parties' standard of living during the marriage, including findings that: (1) defendant was the primary "breadwinner" and that defendant traveled during the week but was home on the weekends; (2) defendant agreed to pay for plaintiff's daughter's college education; (3) defendant rented a condominium in Raleigh and traveled to Wilmington on the weekends; and (4) the parties continued the activities listed above throughout their marriage.
Our review of the transcript verifies that these findings of fact are supported by competent evidence. Because those findings are so supported they are therefore binding on us on appeal.Williams, 299 N.C. at 187, 261 S.E.2d at 858. Accordingly, while defendant argues that the trial court should have found facts differently based on the evidence presented, this Court will not re-weigh the evidence, and defendant's argument as to this issue is rejected.
Defendant next argues that the trial court failed to consider the relevant economic situations of the parties, including their relative earnings and earning capacities. We disagree.
Under N.C. Gen. Stat. § 50-16.3A(b)(2), (4), and (15), the trial court is to consider, where evidence has been presented, the relative earnings and earning capacities of the parties, the amount and sources of earned and unearned income of both of the parties, and factors relating to the economic circumstances of the parties. Because the trial court has made sufficient findings as to all of these factors, we affirm the ruling of the trial court. As to the earning capacity of the parties, and their sources of income, the trial court made the following findings:
6. During the time in Virginia, Defendant was the primary breadwinner and was responsible for all the finances. Plaintiff worked in an orthodontist's office until 1995 when she was laid off. She then began part time work demonstrating products and giving out samples in stores. . . .
. . .
18. Plaintiff has a high school education. She had a North Carolina realtor's license at the time she moved to Virginia and it is now current. She has historically worked as an office manager or, most recently, working part time doing product demonstrations in grocery stores. She has never earned more than $22,000.00 per year.
19. Defendant has worked for Canon Office machines in sales. He works on a base salary plus commission and bonuses. He receives a $462.00 car allowance plus milage. His gross income has been as follows:
a. 2003-$119,181.00
b. 2004-$125,502.00
c. 2005-$114,539.00
d. 2006-$51,445.00 through May 2006.
20. For 2005, based upon Defendant's pay stubs-his average net salary was $7,876.35. From January 1, 2006 through June 2, 2006 Defendant's average net salary was $6,751.96. The Defendant has been making 401(k) contributions of $438.00 per month in 2006.
21. In 2003, Plaintiff's gross income was $11,449.99. In 2004 her Adjusted Gross Income (after business expenses) was $13,708. In 2005, Plaintiff's Adjusted Gross Income was $11,448.00 which included $9,408.00 in Post Separation Support paid by Defendant.
As to other relevant economic circumstances, the trial court made finding of fact number 18, quoted above, and finding of fact number 25, set out below:
25. Since the parties' separation, Defendant has purchased a $367,000.00 house in Myrtle Beach, South Carolina. He currently has only a 10-year mortgage of $59,000.00 on the property. He has incurred additional debt which he did not have while the parties were living together. At the date of the hearing, Defendant had an apartment lease which expired the day after the hearing. He is considering moving to Myrtle Beach after his marriage to Ms. McCallum. The expenses shown on Exhibit B reflect household expenses for the Myrtle Beach House and do not reflect any sharing of expenses with Ms. McCallum should they move there after their marriage which would actually make his expenses less.
Upon review of the transcript, we conclude that there is competent evidence based on the testimony of the parties to support the trial court's findings of fact. Accordingly, these findings are binding on us, and we thus reject defendant's arguments to the contrary.
Defendant also argues that the trial court abused its discretion in awarding alimony by failing to consider the relative needs of the parties under N.C. Gen. Stat. § 50-16.3A(b)(13). We disagree.
Specifically, defendant argues that the trial court arbitrarily, and without reason, reduced defendant's living expenses by more than $370.00 per month. "The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he [or she] is not required to accept at face value the assertion of living expenses offered by the litigants[.]" Whedon v. Whedon, 58 N.C. App. 524, 529, 294 S.E.2d 29, 32 (1982). Moreover, the trial court "may resort to common sense and every-day experiences" in reducing a litigant's claimed expenses. Bookholt v. Bookholt, 136 N.C. App. 247, 251, 523 S.E.2d 729, 732 (1999).
Given the discrepancies between defendant's monthly expenses as claimed on his affidavit and the evidence presented as to his actual monthly expenses, we cannot say that the trial court abused its discretion in reducing the amount of monthly expenses claimed on defendant's affidavit. Defendant's affidavit claimed an expense of $537.00 for an automobile payment and $400.00 for gasoline a month. However, upon cross-examination, defendant admitted to receiving a reimbursement of $5,543.00 per year (approximately $462.00 per month) for automobile expenses, and a monthly reimbursement for gasoline. Additionally, defendant claimed that his expenses associated with dining out were $300.00 per month, but evidence was offered that defendant received a per diem from his employer for his meals.
It is without dispute that the trial court made extensive findings of fact as to plaintiff's earning capacity over the years. Defendant, however, argues that the trial court abused its discretion by factoring in expenses for housing because plaintiff had lived with her mother for over three years prior to the parties' separation, and for including transportation expenses for plaintiff when she did not have any. We disagree.
The parties owned their own home with a mortgage for thirteen of the fifteen years they were married. The plaintiff testified that one of the reasons she was living with her mother was so that the parties could save enough money to build a home in Wilmington. The fact that plaintiff's mother, as opposed to defendant, was paying for costs associated with housing at the time of the separation does nothing to contradict the fact that plaintiff's standard of living throughout the marriage included a suitable place to live. Accordingly, we do not find apportioning funds to plaintiff in the alimony order to pay for housing to be an abuse of discretion. Moreover, plaintiff, at the time of the proceeding, was then living on her own in an apartment.
Defendant contends that plaintiff moved into the apartment in an effort to inflate her expenses in order to receive more in alimony. Although there was testimony to suggest that, it is far from uncontradicted as defendant suggests. Plaintiff testified that she moved out of her mother's home upon the recommendation of her mother's physician. Her testimony was supported by a letter from plaintiff's mother's doctor recommending that plaintiff move into her own residence for her mother's well-being. It is not for this Court to determine the weight and credibility to be given the evidence at trial; that is a determination for the trial court. Phelps v. Phelps, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994). The testimony of plaintiff and the letter from plaintiff's mother's doctor are competent evidence to support the trial court's conclusion that plaintiff moved into an apartment in order to benefit her mother. Accordingly, the trial court's finding of fact as to this issue is binding upon this Court and defendant's arguments as to this issue are rejected.
Defendant's final argument as to alimony is that the trial court erred in apportioning part of the alimony to pay for plaintiff's car payment because, at the time of the hearing, plaintiff had no car payment. We disagree.
Evidence in the record shows that plaintiff was in possession of a 2001 Crown Victoria with 159,000 miles and it was in poor condition. Thus, the trial court determined that plaintiff's standard of living during the marriage included a vehicle. Accordingly, the trial court apportioned $350.00 per month to plaintiff based on an estimate that plaintiff had received on the cost of a used 2002 Toyota Camry. In order to maintain plaintiff's standard of living associated with the marriage over the seven year period in which the alimony was awarded, it was reasonable for the trial court to conclude that another vehicle would need to be purchased by plaintiff over the course of the alimony order. As we stated above, trial courts "may resort to common sense and every-day experiences." Bookholt, 136 N.C. App. at 251, 523 S.E.2d at 732. The trial court having done so in this case, we cannot say the decision to apportion funds for a car payment amounted to an abuse of discretion. Based on the above, we hold that the trial court did not abuse its discretion in awarding plaintiff $3,000.00per month in alimony. Defendant's assignments of error as to this issue are therefore rejected.

III.
Defendant next argues that the trial court erred by making no findings as to the reasonableness of plaintiff's attorneys' fees. Plaintiff counters that this Court does not have jurisdiction to review the order granting attorneys' fees. We agree with plaintiff and dismiss defendant's appeal as to this issue.
Under North Carolina Rule of Appellate Procedure 3(d), appellants are required to "designate the judgment or order from which [their] appeal is taken[.]" N.C.R. App. P. 3(d). Failure to do so means this Court is not vested with jurisdiction. Johnson & Laughlin, Inc. v. Hostetler, 101 N.C. App. 543, 546, 400 S.E.2d 80, 82 (1991). In this case, the trial court stated in its 1 August 2006 order that plaintiff is "awarded her reasonable attorney's fees which shall be addressed in a separate order[.]" On 14 December 2006, the trial court entered the order that granted plaintiff attorneys' fees. That order, however, is not contained in the record nor has it been appealed to this Court. The record on appeal was not perfected until 5 January 2007, after the date the trial court entered the award of attorneys' fees.
With the order granting the amount of attorneys' fees not before us, defendant is attempting to make an end-run around that order by arguing that the 1 August 2006 order in which the trial court stated that plaintiff would be entitled to attorneys' fees does not contain sufficient findings of fact concerning the amount of the fees. We are unwilling to reward defendant for failure to appeal the award of attorneys' fees by reviewing an incomplete record when he had ample time to either: (1) amend the record; or (2) take a separate appeal from the 14 December 2006 order. Because defendant has failed to give notice of appeal from the 14 December 2006 order, this Court is without jurisdiction to review the reasonableness of the attorneys' fees awarded, and defendant's appeal as to this issue is therefore dismissed.

IV.
Defendant's final argument is that the trial court abused its discretion in requiring defendant to pay his alimony obligation through an automatic bank draft. We disagree.
N.C. Gen. Stat. § 50-16.7 (2005) establishes the ways in which alimony may be paid to the receiving party. Under the statute, an alimony obligation may be satisfied by, inter alia, a transfer of real or personal property, by granting the payee spouse creditor status under Chapter 39 of the General Statutes, by security of a bond, or by attachment or garnishment. Id. This list, however, is not exclusive as the trial court "may require the supporting spouse to secure the payment of alimony or post separation support so ordered by . . . any . . . means ordinarily used to secure an obligation to pay money or transfer property[.]" N.C. Gen. Stat. § 50-16.7(b) (emphasis added).
The methodology used by the trial court under this statute is reviewed for an abuse of discretion.Austin v. Austin, 12 N.C. App. 390, 392-93, 183 S.E.2d 428, 430 (1971). Defendant argues that payment by check is the typical method in which alimony is paid. Assuming, arguendo, that this is the typical method, defendant has failed to establish that the trial court, by using an arguably more effective method to ensure that the alimony obligation is paid, abused its discretion. Accordingly, defendant's assignment of error as to this issue is rejected.

V.
In summary, this Court affirms the order of the trial court as to alimony because the clerical error committed by the trial court did not prejudice defendant. We also conclude that the trial court did not abuse its discretion in setting the amount of alimony or in requiring defendant to meet his alimony obligation through automatic draft of his bank account. Finally, this Court dismisses defendant's appeal as to the award of attorneys' fees as that order has not been appealed to this Court. The trial court's judgment in this case is therefore affirmed.
Affirmed.
Judges WYNN and JACKSON concur.
Report per Rule 30(e).